UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X

KENDALL BROWNE,

                           Plaintiff,                      23 Civ. 8280 (AEK)

    -against-                                **DECISION AND ORDER**

P.O. S. RIVERA *Shield # 1963, Officially and
Individually*, and CITY OF MIDDLETOWN,

                           Defendants.
---------------------------------------------------------------X

**THE HONORABLE ANDREW E. KRAUSE, U.S.M.J.**[1]

      Plaintiff Kendall Browne brings this action against Defendants City of Middletown and Middletown Police Officer Salvador Rivera ("P.O. Rivera"), asserting various causes of action arising out of an August 30, 2023 traffic stop. *See generally* ECF No. 9 ("Amended Complaint" or "Am. Compl."). Currently before the court is Defendants' motion for summary judgment. ECF No. 32. For the reasons set forth below, Defendants' motion is GRANTED.

## BACKGROUND

**I.    Factual Background**

      The facts set forth in this section are undisputed unless otherwise noted and are taken from Defendants' Local Civil Rule 56.1 Statement, ECF No. 34 ("Defs.' 56.1 Statement"), and

---

[1] On December 7, 2023, the Honorable Nelson S. Román endorsed and docketed a fully executed Form AO 85, "Notice, Consent, and Reference of a Civil Action to a Magistrate Judge," in which the parties consented to the reassignment of this matter to a United States Magistrate Judge in accordance with 28 U.S.C. § 636(c). ECF No. 22. This matter was then reassigned to the undersigned.

the supporting materials submitted by Defendants. Plaintiff did not submit a response to Defendants' Local Civil Rule 56.1 Statement.[2]

On August 30, 2023, P.O. Rivera conducted a traffic stop of the vehicle that was being driven by Plaintiff in Middletown, New York; P.O. Rivera initiated the stop because the driver of the vehicle had failed to signal in violation of New York Vehicle and Traffic Law ("VTL") § 1163B, and because the windows of the vehicle "were completely non-transparent" in violation of VTL §§ 375.12-a(b)(1)-(3). Defs.' 56.1 Statement ¶¶ 1-3; ECF No. 36 (Affidavit of Salvador Rivera ("Rivera Aff.")) ¶ 4; ECF No. 35 (Affidavit of Alex Smith ("Smith Aff.")) Ex. D ("Browne Dep.") at 12:3-22. When P.O. Rivera first observed Plaintiff's vehicle, he could not tell whether the driver was male or female, nor could he observe the race of the driver. Defs.' 56.1 Statement ¶ 5; Rivera Aff. ¶ 5. P.O. Rivera did not see these characteristics of the driver until Plaintiff stuck his head out of the vehicle's window after P.O. Rivera had initiated the stop and Plaintiff had pulled over to the side of the road. *Id.*

---

[2] Local Civil Rule 56.1 of the Joint Local Rules of the United States District Courts for the Southern and Eastern Districts of New York mandates that "[t]he papers opposing a motion for summary judgment must include a correspondingly numbered paragraph admitting or denying, and otherwise responding to, each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried." This requirement extends to a *pro se* plaintiff who has been provided with proper notice of this obligation pursuant to Local Civil Rule 56.2, as Plaintiff was here. *See* ECF No. 33; *Cain v. Esthetique*, 182 F. Supp. 3d 54, 63 (S.D.N.Y. 2016). Under the Local Rule, "[i]f the opposing party . . . fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted." *Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d Cir. 2003). Although Plaintiff failed to respond to Defendants' Local Civil Rule 56.1 Statement, and therefore did not comply with the Local Rules, the Court has exercised its "broad discretion to determine whether to overlook a party's failure to comply with local court rules," and has opted to "conduct an assiduous review of the record" for purposes of deciding the instant motion. *See Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001) (quotation marks omitted).

At the time of the traffic stop, Plaintiff was driving a blue 2022 Honda Accord, which was owned by Yolanda Williams. Defs.' 56.1 Statement ¶ 8; Browne Dep. at 7:3-20, 9:15-22. P.O. Rivera observed that the vehicle's "windows" all were impermissibly tinted. Defs.' 56.1 Statement ¶ 2; Rivera Aff. ¶ 4. P.O Rivera did not conduct a tint meter test "because the windows were completely and obviously non-transparent." Defs.' 56.1 Statement ¶ 4; Rivera Aff. ¶ 4. The VTL requires that a motor vehicle's front windshield, side windows, and rear windows allow for light transmittance of at least 70 percent. *See* VTL §§ 375.12-a(b)(1)-(3). Based on P.O. Rivera's observations, the windows of the vehicle that Plaintiff was operating "obviously blocked more than 30% light transmittance." Rivera Aff. ¶ 4. New York law provides for an exemption from this requirement for medical reasons, *see* VTL 375.12-a(c), but neither Plaintiff nor Ms. Williams had been granted a medical exemption at the time of the August 30, 2023 stop, *see* Browne Dep. at 23:23-24:4, 26:4-20, 27:8-11.[3]

P.O. Rivera issued Plaintiff four appearance tickets—one for the failure to signal violation and three for the tinted window violations. Defs.' 56.1 Statement ¶ 6; Rivera Aff. ¶ 2 & Ex. C; Smith Aff. Ex. E at ECF pgs. 3-6. On December 21, 2023, Plaintiff appeared in Middletown City Court and pled guilty to a charge of "parking on pavement" in violation of VTL § 1201a; this adjudication covered, among other things, all charges related to the four

---

[3] On May 6, 2024, Plaintiff notified defense counsel that he had been granted a tinted window exemption for the blue 2022 Honda Accord that he was driving at the time of the traffic stop on August 30, 2023, and provided counsel with a copy of the exemption certificate he received from the New York State Department of Motor Vehicles. ECF No. 41 (Reply Affidavit of Alex Smith) ¶ 3 & Ex. N. Though Plaintiff now has an exemption, he had only applied for an exemption at the time of the August 30, 2023 traffic stop and had not yet received one. Browne Dep. at 23:7-24:4. The fact that Plaintiff subsequently acquired an exemption has no bearing on the outcome of this motion.

tickets issued during the August 30, 2023 stop. Defs.' 56.1 Statement ¶ 16; Smith Aff. Ex. E at ECF pgs. 1-2.

P.O. Rivera estimated that in the one year prior to submitting his May 1, 2024 affidavit, he stopped approximately 200 cars per month as part of his traffic enforcement assignment, and further estimated that approximately 50 percent of the drivers of these vehicles were Caucasian. Defs.' 56.1 Statement ¶ 7; Rivera Aff. ¶ 7. Moreover, P.O. Rivera estimated that he issued traffic tickets in approximately 80-90 percent of these stops. *Id.* According to P.O. Rivera, he has issued between 200 and 250 tint violation summonses, and quite often, he was not aware of the driver's race or gender until after the stop due to the non-transparency of the windows. *Id.*

## II.     Procedural History

Plaintiff initiated this action on September 18, 2023, ECF No. 1, and filed the amended complaint on October 27, 2023, *see* Am. Compl. Defendants filed their answer on November 6, 2023. ECF No. 11. The Court set a briefing schedule for Defendants' motion for summary judgment at a status conference on March 27, 2024, *see* ECF No. 30, and on May 3, 2024, Defendants filed the instant motion for summary judgment and accompanying papers, ECF Nos. 32-39. Plaintiff filed his opposition to the motion for summary judgment on May 31, 2024, ECF No. 40 ("Pl.'s Opp."), and Defendants submitted their reply memorandum of law and supporting papers on July 15, 2024, ECF Nos. 41-44. On July 22, 2024, Defendants submitted a supplemental letter notifying the Court of a typographical error in one of the affidavits submitted in support of the motion. *See* ECF No. 45.

## LEGAL STANDARDS FOR SUMMARY JUDGMENT

### I.     Summary Judgment

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the

4

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 320-23 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, a court is required to "resolv[e] all record ambiguities and draw[] all factual inferences in favor of the non-moving party." *ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 145 (2d Cir. 2007); *see also Anderson*, 477 U.S. at 261 n.2; *Mount Vernon Fire Ins. Co. v. Belize NY, Inc.*, 277 F.3d 232, 236 (2d Cir. 2002). A party cannot overcome summary judgment by relying on "mere speculation or conjecture as to the true nature of the facts" because "conclusory allegations or denials" cannot "create" genuine disputes of material fact "where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quotation marks omitted). Nor can a party opposing summary judgment "rest on the allegations or denials of his pleading." *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). Moreover, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge[.]" *Anderson*, 477 U.S. at 255; *accord Williams v. N.Y.C. Housing Auth.*, 61 F.4th 55, 76 (2d Cir. 2023). "Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted." *Cruden v. Bank of N.Y.*, 957 F.2d 961, 975 (2d Cir. 1992) (citing *H.L. Hayden Co. v. Siemens Med. Sys. Inc.*, 879 F.2d 1005, 1011 (2d Cir. 1989)).

## II.     Filings by *Pro Se* Litigants

In cases involving *pro se* litigants, on a motion for summary judgment, the court reads the submissions of the *pro se* party "liberally and interpret[s] them to raise the strongest arguments that they suggest." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (quotation marks omitted). Nonetheless, application of this different standard "does not

otherwise relieve a litigant of the usual requirements of summary judgment, and a *pro se* party's bald assertions unsupported by evidence are insufficient to overcome a motion for summary judgment." *Gunn v. Milani*, No. 20-cv-2681 (KMK), 2024 WL 4124319, at *7 (S.D.N.Y. Sept. 9, 2024) (cleaned up).[4]

## DISCUSSION

As a threshold matter, Defendants devote significant space in both their opening memorandum of law and in their reply submission to the argument that Plaintiff's claims are barred by the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994). ECF No. 38 ("Defs.' Mem.") at 7-10; ECF No. 43 ("Defs.' Reply") at 2-5. Because the Court finds that Plaintiff's claims are subject to dismissal for the reasons set forth below, it is not necessary to reach the question of whether the *Heck* doctrine bars some or all of Plaintiff's claims. *See Teichmann v. New York*, 769 F.3d 821, 829 (2d Cir. 2014) (Calabresi, J., concurring) ("[T]here are many cases that have the potential to raise *Heck* questions [that] can be disposed of based on well-settled principles upon which there is broad agreement, and when that is so, it is generally desirable for . . . district courts to decide them on these non *Heck* grounds.").

### I. Plaintiff's Vagueness Challenge to Section 375.12-a(a) of the VTL

Plaintiff contends that VTL § 375.12-a(a) "is unconstitutional for vagueness because it does not clearly, precisely, exactly, and explicitly define what 'other nontransparent material' means," and that as a result Plaintiff's right to due process of law was violated because he lacked

---

[4] In accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009), and Local Civil Rule 7.2 of the Joint Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, copies of this case and other cases that are unpublished or only available by electronic database are being simultaneously mailed to the *pro se* Plaintiff along with this Decision and Order.

an understanding of what conduct was prohibited by the statute. Am. Compl. ¶ 15. The Court disagrees.

VTL § 375.12-a(a) provides that "[n]o person shall drive any motor vehicle with any sign or other nontransparent material other than a certificate or paper required to be displayed by law upon the front windshield or the sidewings or side windows on either side forward of or adjacent to the operator's seat." Though this section of the statute contains the language that Plaintiff challenges in the Amended Complaint as unconstitutionally vague, Plaintiff was not actually cited for a violation of VTL § 375.12-a(a) on August 30, 2023; rather, the three citations relating to the improper tint of the windows on the vehicle Plaintiff was driving were issued pursuant to VTL §§ 375.12-a(b)(1), (2) and (3), none of which contain the phrase "other nontransparent material." *See* VTL § 375.12-a(b)(1)-(3); Smith Aff. Ex. E at ECF pgs. 4-6 (noting "violation section" as VTL §§ 375.12-a(b)(1), (2), and (3)). VTL §§ 375.12-a(b)(1) and (2) prohibit any person from operating upon a public road, highway or street a motor vehicle that has a front windshield, sidewings, or side windows that are "composed of, covered by or treated with any material which has a light transmittance of less than seventy percent."[5] VTL § 375.12-a(b)(3) prohibits any person from operating upon a public road, highway or street a vehicle "classified as a station wagon, sedan, hardtop, coupe, hatchback or convertible" with rear side windows that have "light transmittance of less than seventy percent."

The Fourteenth Amendment's guarantee that no state shall "deprive any person of life, liberty, or property, without due process of law," U.S. Const. amend. XIV, § 1, entitles a person

---

[5] VTL 375.12-a(b)(1) does permit the "uppermost six inches of the windshield" to be covered or treated with material with a light transmittance of less than seventy percent. As noted, P.O. Rivera observed that the "windows" of the vehicle that Plaintiff was driving on August 30, 2023 were "completely non-transparent." Rivera Aff. ¶ 4.

7

to "be informed as to what [a state law] commands or forbids." *Thibodeau v. Portuondo,* 486 F.3d 61, 65 (2d Cir. 2007) (cleaned up). "As one of the most fundamental protections of the Due Process Clause, the void-for-vagueness doctrine requires that laws be crafted with sufficient clarity to give the person of ordinary intelligence a reasonable opportunity to know what is prohibited and to provide explicit standards for those who apply them." *Id.* "A statute can be impermissibly vague for either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado,* 530 U.S. 703, 732 (2000). Plaintiff cannot demonstrate that the challenged VTL provision is unlawfully vague under either of these tests.

As to the potential for arbitrary and discriminatory enforcement of VTL § 375.12-a(a)—which contains the purportedly problematic phrase "other nontransparent material"—Plaintiff cannot raise a valid claim regarding the enforcement of this particular statute in this case because he was not cited for a violation of VTL § 375.12-a(a) on August 30, 2023. Plaintiff was ticketed for having a front windshield, rear side windows, and sidewings that were nontransparent—*i.e.*, that had a light transmittance of less than 70 percent. *See* VTL § 375.12-a(b)(1)-(3); Smith Aff. Ex. E at ECF pgs. 4-6. None of Plaintiff's citations that day specifically reference VTL § 375.12-a(a); accordingly, there is no basis for Plaintiff to assert that the particular statutory language that he contests was the basis for any enforcement action against him.

And in any event, the phrase "other nontransparent material" in VTL § 375.12-a(a) is sufficient to put drivers on notice of what conduct is prohibited by that statute. Looking at the disputed phrase in its fuller statutory context makes the meaning even more plain—drivers may not operate motor vehicles "with any sign or other nontransparent material" in specified

8

windows other than certificates or papers that are required to be displayed by law. *See* VTL § 375.12-a(a). There is nothing ambiguous, uncertain, or unclear about this language—a driver is not permitted to have *any* document or material obstructing his or her windows except those that are specifically required by law, unless some exemption (such as the exemption that Plaintiff has since received, *see* footnote 3, *supra*) applies. The phrase "other nontransparent material" simply does not "fail[] to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits." *Hill*, 530 U.S. at 732. That the statute does not specify each and every prohibited material that it covers does not render it unconstitutionally vague. *See United States v. Dawkins*, 999 F.3d 767, 787 (2d Cir. 2021) (explaining that a statute "need not achieve meticulous specificity, which would come at the cost of flexibility and reasonable breadth").[6]

For all of these reasons, Defendants' motion for summary judgment regarding Plaintiff's vagueness challenge to VTL § 375.12-a(a) is GRANTED.

## II.     Plaintiff's § 1983 Claims

Plaintiff's other claims are made pursuant to 42 U.S.C. § 1983. That statute provides, in relevant part, that "[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. "[T]his language does not create substantive rights; rather, it creates a mechanism by which individuals can vindicate the violation of rights secured elsewhere."

---

[6] Notably, Plaintiff does not offer any arguments in his opposition brief to support his vagueness challenge to VTL § 375.12-a(a).

*Santucci v. Levine*, No. 17-cv-10204 (PMH), 2021 WL 76337, at *3 (S.D.N.Y. Jan. 8, 2021). The Court will address each of Plaintiff's § 1983 claims in turn.

    **A.    Equal Protection Claim**

Plaintiff contends that P.O. Rivera "with no rational basis, knowingly[,] willfully[,] and intentionally targeted [him] because he is a person of color" and in doing so violated his right to equal protection under the Fourteenth Amendment to the U.S. Constitution. Am. Compl. ¶¶ 13-14. But Plaintiff has not come forward with sufficient evidence to raise a genuine issue of material fact as to this claim, and Defendants are entitled to summary judgment.

The Equal Protection Clause of the Fourteenth Amendment provides, in relevant part, that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. This provision is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). "To state a race-based claim under the Equal Protection Clause of the Fourteenth Amendment, 'a plaintiff must allege that a government actor intentionally discriminated against him on the basis of his race.'" *Greene v. City of New York*, No. 08-cv-243 (AMD) (CLP), 2017 WL 1030707, at *30 (E.D.N.Y. Mar. 15, 2017) (quoting *Brown v. City of Oneonta,* 221 F.3d 329, 337 (2d Cir. 2000)), *aff'd,* 742 F. App'x 532 (2d Cir. 2018) (summary order). There are three ways to establish intentional racial discrimination in violation of the Equal Protection Clause:

> *First*, a plaintiff could point to a law or policy that expressly classifies persons on the basis of race. *Second*, a plaintiff could identify a facially neutral law or policy that has been applied in an intentionally discriminatory manner. *Third*, a plaintiff could also allege that a facially neutral statute or policy has an adverse effect and that it was motivated by discriminatory animus. In none of these three cases is a plaintiff obligated to show a better treated, similarly situated group of individuals of a different race in order to establish a claim of denial of equal protection.

*Floyd v. City of New York*, 959 F. Supp. 2d 540, 570 (S.D.N.Y. 2013) (cleaned up); *Brown,* 221 F.3d at 337.  There is no allegation in the Amended Complaint, and no evidence in the record before the Court, that any provision of the VTL expressly classifies persons on the basis of race or that the facially neutral statutes have an adverse effect on persons of any particular race.  Accordingly, Plaintiff's equal protection claim must be understood as falling within the second of these categories—a facially neutral law that has been applied in an intentionally discriminatory manner.  Discriminatory intent requires proof that "a discriminatory purpose has been *a* motivating factor in the challenged action," *i.e.*, that "those who carried out the challenged action selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Floyd*, 959 F. Supp. 2d at 571 (emphasis in original) (cleaned up).[7]

Beyond conclusory and self-serving assertions that P.O. Rivera "targeted" him or "profiled" him because of his race, Browne Dep. at 13:5-14:16, Plaintiff has not offered any facts from which a rational trier of fact could conclude that P.O. Rivera singled out Plaintiff for a traffic stop on August 30, 2023 because of his race, or that the traffic stop was animated by an intent to discriminate.  In his affidavit, P.O. Rivera stated that when he first observed the vehicle that Plaintiff was driving, he "could not tell whether the driver was male or female; nor could [he] observe the race of the driver" until Plaintiff "stuck his head out of the window after [P.O. Rivera] had initiated the stop and Plaintiff had pulled over to the side of the road."  Rivera Aff. ¶

---

[7] Plaintiff's equal protection claim is articulated in the Amended Complaint under the heading "Class of One," but the substance of the claim alleges that P.O. Rivera targeted him due to his race.  Am. Compl. ¶¶ 13-14.  Because "class of one" claims are reserved for instances where a plaintiff does not "allege membership in a protected class," the claim here is more appropriately analyzed under the framework outlined above.  *See Mateo v. Dawn*, No. 14-cv-2620 (KMK), 2016 WL 5478431, at *4 (S.D.N.Y. Sept. 28, 2016).

5. In other words, P.O. Rivera commenced the traffic stop before he even knew the race of the driver of the blue Honda.

In the Amended Complaint, Plaintiff alleges that P.O. Rivera "does not often or routinely cite other motorists who are of the Caucasian race." Am. Compl. ¶ 13. But Plaintiff has not come forward with any evidence to support this assertion; indeed, the only evidence in the record on this point directly contradicts Plaintiff's allegation. Plaintiff attempts to show that P.O. Rivera generally exhibits "racial animus," Pl.'s Opp. ¶ 3, in conducting traffic stops by pointing to a log produced during discovery of all of P.O. Rivera's traffic stops for the month of August 2023. In the log, the race and ethnicity of the drivers stopped is most frequently listed as "unknown." *See* Pl.'s Opp. Ex. A. Plaintiff argues that P.O. Rivera's supposed "failure" to note the race and ethnicity of each driver raises a material issue of fact as to whether there were any "racial disparities" in the "motorists stopped at the mercy of P.O. Rivera." Pl.'s Opp. ¶ 4. But the uncontroverted evidence in the record, supplied in an affidavit submitted by Middletown Police Lieutenant Eric Harget, is that "New York State does not require police officers to obtain or log the race, color, or national origins of persons pulled over—or issued tickets—for violations of the [VTL]."[8] ECF No. 42 ("Harget Aff.") ¶ 3. In light of this representation, there is nothing unusual or surprising about the fact that there is no information about the race or ethnicity of the individuals stopped by P.O. Rivera in the Middletown Police Department files, and this evidence is plainly not sufficient to raise a genuine issue of material fact as to Plaintiff's equal protection claim. The only evidence that is in the record regarding the race of the drivers

---

[8] Lieutenant Harget noted that in preparing the log for production to Plaintiff in discovery, the names of the drivers who had been stopped by P.O. Rivera in August 2023 were cross checked with other non-traffic stop related records in the Middletown Police Department files. For the handful of instances on the log where a driver's race is indicated, it is because that individual's race was included in another record. *See* Harget Aff. ¶¶ 3-4.

that P.O. Rivera has stopped and cited in his traffic enforcement work comes from P.O. Rivera himself, and that evidence indicates that P.O. Rivera stopped and ticketed drivers of all races. P.O. Rivera estimated that in the one year prior to submitting his May 1, 2024 affidavit, he stopped approximately 200 cars per month as part of his traffic enforcement assignment, and further estimated that approximately 50 percent of the drivers of these vehicles were Caucasian. Defs.' 56.1 Statement ¶ 7; Rivera Aff. ¶ 7.  Moreover, P.O. Rivera estimated that he issued traffic tickets in approximately 80-90 percent of these stops.  *Id.*  According to P.O. Rivera, he has issued between 200 and 250 tint violation summonses, and quite often, he was not aware of the driver's race or gender until after the stop due to the non-transparency of the windows.  *Id.* At bottom, there is no evidence in the record that would permit a reasonable jury to infer that P.O. Rivera treated Plaintiff in a manner different that he would any other driver, or that he acted with discriminatory intent when he initiated the traffic stop of the vehicle that Plaintiff was driving.

Accordingly, Defendants' motion for summary judgment as to Plaintiff's equal protection claim is GRANTED.

### B.    Substantive Due Process Claim

Plaintiff also asserts that P.O. Rivera's application of VTL § 375.12-a amounted to a violation of his right to "substantive due process." Am. Compl. ¶ 16.  Again, the Court disagrees.

To prevail on a claim for a substantive due process violation, a plaintiff must establish that he was deprived of a protected liberty interest.  *See Baez v. Pinker*, 673 F. App'x 50, 52 (2d Cir. 2016) (summary order).  "The first step in analyzing a substantive due process claim is to identify the particular liberty interest at stake." *Cotz v. Mastroeni*, 476 F. Supp. 2d 332, 360 (S.D.N.Y. 2007).  It is unclear what liberty interest Plaintiff contends is at stake here—Plaintiff

13

does not clearly articulate this in the Amended Complaint, and the invocation of substantive due process in paragraph 16 of the Amended Complaint is in connection with Plaintiff's allegations regarding the alleged vagueness of VTL § 375.12-a(a).  Plaintiff also does not make any arguments regarding substantive due process in his opposition to the motion for summary judgment.  Still, interpreting Plaintiff's *pro se* pleadings liberally, it is possible that Plaintiff is asserting that the August 30, 2023 traffic stop violated his right to be free from unreasonable seizure.  Such a claim is more appropriately analyzed under the Fourth Amendment to the U.S. Constitution.  *See Cox v. Vill. of Pleasantville*, 271 F. Supp. 3d 591, 609 (S.D.N.Y. 2017) (when "a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing those claims" (cleaned up)).

The Fourth Amendment proscribes "unreasonable searches and seizures."  U.S. Const. amend. IV.  A traffic stop is a "seizure" of the driver within the meaning of the Fourth Amendment "even though the purpose of the stop is limited and the resulting detention quite brief."  *Brendlin v. California*, 551 U.S. 249, 255 (2007) (cleaned up).  "The Fourth Amendment requires that an officer making such a stop have probable cause or reasonable suspicion that the person stopped has committed a traffic violation or is otherwise engaged in or about to be engaged in criminal activity."  *Holeman v. City of New London*, 425 F.3d 184, 189 (2d Cir. 2005).

It is clear based on the record before the Court that P.O. Rivera had at least reasonable suspicion to stop the vehicle that Plaintiff was driving on August 30, 2023.  P.O. Rivera stated in his affidavit that he pulled Plaintiff over because Plaintiff "had failed to signal in violation of the State VTL provision and because the windows of the vehicle [that Plaintiff was driving] were

14

completely non-transparent." Rivera Aff. ¶ 4. At no point has Plaintiff disputed that his windshield, side windows, and rear side windows all were impermissibly tinted in violation of the VTL, and in fact he eventually pled guilty to a separate traffic violation charge to resolve the citations he received at the August 30, 2023 traffic stop. *See* Defs.' Defs.' 56.1 Statement ¶ 16; Smith. Aff. Ex. E at ECF pgs. 1-2. Because P.O. Rivera's stop of Plaintiff's vehicle was based on at least reasonable suspicion (if not probable cause), any purported claim based on Plaintiff's Fourth Amendment right to be free from unreasonable seizure must be dismissed.[9]

Accordingly, Defendants' motion for summary judgment as to Plaintiff's substantive due process claim—which is better understood as a Fourth Amendment unreasonable seizure claim—is GRANTED.

### C.     Municipal Liability Claim

Plaintiff alleges a claim for municipal liability against the City of Middletown, asserting that the City "failed to adequately screen, train, supervise, and monitor" P.O. Rivera regarding

---

[9] Defendants raised various additional arguments in their motion papers that the Court need not address here. First, even construing Plaintiff's pleadings and submissions liberally to raise the strongest possible arguments they suggest, the Court does not consider Plaintiff to have alleged causes of action in the Amended Complaint for false arrest or malicious prosecution. *See* Defs.' Mem. at 10-11. And in any event, even if the brief traffic stop on August 30, 2023 could be considered an arrest, P.O. Rivera had probable cause to arrest plaintiff for the violations of VTL § 375.12-a(b)(1)-(3), which would vitiate any false arrest claim, *see Wang v. Vahldieck*, No. 09-cv-3783 (ARR) (VVP), 2012 WL 119591, at *4 (E.D.N.Y. Jan. 9, 2012). There can be no claim for malicious prosecution here either because Plaintiff pled guilty to a traffic violation to address the citations issued by P.O. Rivera on August 30, 2023, and therefore he cannot satisfy the favorable termination requirement of a malicious prosecution claim. *See Soberanis v. City of New York*, 244 F. Supp. 3d 395, 402 (S.D.N.Y. 2017). Second, as for Plaintiff's purported state law claims, *see* Defs.' Mem. at 17-18, Plaintiff himself made clear in his opposition to the motion for summary judgment that he withdrew the state law claims that were included in the original complaint when he filed the Amended Complaint, *see* ECF No. 40 at ECF pg. 5. Third, because the Court has determined that Plaintiff has not raised a triable issue as to any of Plaintiff's causes of action, there is no need to reach the question of whether P.O. Rivera is entitled to qualified immunity, or whether Plaintiff's request for injunctive relief was ever proper or is now moot. *See* Defs.' Mem. at 19-21; Defs.' Reply at 7.

the application of VTL §§ 375.12-a in a non-discriminatory manner.  Am. Compl. ¶ 17.  This claim also must be dismissed.

"Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort."  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).  Thus, "to prevail on a claim against a municipality under section 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury."  *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008); *accord Cowan v. City of Mount Vernon*, 95 F. Supp. 3d 624, 636 (S.D.N.Y. 2015).

"In determining municipal liability, it is necessary to conduct a separate inquiry into whether there exists a 'policy' or 'custom.'"  *Davis v. City of New York*, 228 F. Supp. 2d 327, 336 (S.D.N.Y. 2002).  A plaintiff may satisfy the "policy or custom" requirement by proving one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Buari v. City of New York*, 530 F. Supp. 3d 356, 397-98 (S.D.N.Y. 2021) (collecting cases). In addition, to prevail on a municipal liability claim, a plaintiff must show "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation."  *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *see City of St. Louis v. Praprotnik*, 485 U.S. 112,

16

122 (1988) ("Governments should be held responsible when, and only when, their official policies cause their employees to violate another person's constitutional rights.").

Because Plaintiff has failed to come forward with sufficient evidence to allow a reasonable jury to conclude that he suffered a deprivation of any constitutional right, any claim for municipal liability must be dismissed as well.  *Ramlogan v. White*, No. 20-cv-5879 (JPC), 2024 WL 1313417, at *9 (S.D.N.Y. Mar. 27, 2024).

Accordingly, Defendants' motion for summary judgment as to Plaintiff's municipal liability claim is GRANTED.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (ECF No. 32) is GRANTED.  The Clerk of Court is respectfully directed to terminate all pending motions, enter judgment in favor of Defendants, and close this case.

Dated: March 28, 2025
       White Plains, New York

**SO ORDERED.**

_____
ANDREW E. KRAUSE
United States Magistrate Judge

A copy of this Decision and Order has been mailed by Chambers to the *pro se* Plaintiff at his address of record on the docket as of the date of the Decision and Order.